## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF ) | |
| MACHINISTS & AEROSPACE ) | |
| WORKERS LOCAL I460 ) | |
| P.O. Box 536 ) | |
| Perryville, Maryland 21903 ) | |
| Cecil County ) | |
| ) | |
|     Plaintiff, ) | |
|         v. ) | |
| ) | |
| TOWN OF PERRYVILLE ) | Civil Action No.: 25-73 |
| 515 Broad Street ) | |
| Perryville, Maryland 21903 ) | |
| ) | **COMPLAINT** |
| PERRYVILLE POLICE DEPARTMENT ) | |
| 2 Perryville Town Center Drive ) | |
| Perryville, Maryland 21903 ) | |
| ) | |
| MICHELLE LINKEY ) | |
| 515 Broad Street ) | |
| Perryville, Maryland 21903 ) | |
| ) | |
| ROBERT S. NITZ ) | |
| 2 Perryville Town Center Drive ) | |
| Perryville, Maryland 21903 ) | |
| ) | |
| ) | |
|     Defendants. ) | |

## INTRODUCTION

Plaintiff International Association of Machinists & Aerospace Workers Local I460 has brought this action to affirm the constitutional and federal labor law rights of Local I460 members, who are employed by IKEA Distribution Services, Inc. at a distribution warehouse operated in the Town of Perryville, Maryland.

Plaintiff is currently in a contract dispute with IKEA, which resulted from IKEA's failure to enter into a collective bargaining agreement that provided fair wages to Local I460 members, and continued the seniority protections that members have previously enjoyed. On November 15, 2024, Local I460 members went on strike in protest of IKEA's failure to provide fair pay and fair working conditions.

In service of the strike effort, Plaintiff has conducted a picket at a site near the entrance to the Perryville distribution warehouse, along Maryland Road 327, which is also known as IKEA Road. This location is immediately proximate to the site where the employees represented by Local I460 work, giving those employees the most focused opportunity to express their federally protected dissatisfaction with IKEA's stance in the contract dispute to business partners and other employees of IKEA, all of whom may have an interest in supporting Local I460 members' claims for fair pay and fair work, and which poses the least risk of entangling any other employers or individuals in the dispute between Local I460 and IKEA.

On November 26th, an officer of the Perryville Police Department ordered Plaintiff's members and supporters not to cross Maryland Road 327, for any period of time, as a part of the strike picket. The Perryville Police Department has enforced that order by arresting a union leader for his assertion that he would not follow it.

The order, and the actions that the Perryville Police Department have taken to enforce it, have violated the rights of Plaintiff Local I460 members to engage in picketing protected under federal labor law and the First Amendment. Court intervention is required to permit Local I460 members to exercise their federal rights during the strike picket.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff International Association of Machinists & Aerospace Workers Local I460 is a labor organization that serves as the exclusive bargaining representative for approximately 320 workers who are employed by the IKEA Distribution Center located in Perryville, Maryland. Plaintiff Local I460 is suing to protect its own right, and the rights of its members, to engage in activities protected by Section 7 of the National Labor Relations Act, 29 U.S.C. § 157; the First Amendment of the United States Constitution; and Article 40 of the Maryland Declaration of Rights.

2.      Defendant Town of Perryville is a municipal corporation with its principal place of operations located at 515 Broad Street, Perryville, Maryland 21903.

3.      Defendant Perryville Police Department is a municipal law enforcement agency with its principal place of operations located at 2 Perryville Town Center Drive, Perryville, Maryland 21903.

4.      Defendant Michelle Linkey is the Mayor of Perryville, Maryland. Defendant Linkey is being sued in her official capacity, as she is empowered to effectuate compliance with the injunctive relief sought in this Complaint. At all times relevant, Defendant Linkey was working as an agent, employee, or servant of Defendant Town of Perryville.

5.      Defendant Robert S. Nitz is the Chief of the Perryville Police Department. Defendant Nitz is being sued in his official capacity, as he is empowered to effectuate compliance with the injunctive relief sought in this Complaint. At all times relevant, Defendant Nitz was working as an agent, employee, or servant of Defendants Town of Perryville, Perryville Police Department, and Michelle Linkey.

6.      This Court has jurisdiction over the federal law claims pled in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1343, and jurisdiction over the state law claims pled in this Complaint pursuant to 28 U.S.C. § 1367.

7.      Venue in the District of Maryland, Northern Division is proper pursuant to 28 U.S.C. § 1391(b) and Rule 501.4(a)(i) of the Local Civil Rules.

## STATEMENT OF FACTS

8.      Plaintiff IAM Local I460 serves as the exclusive bargaining representative of a unit of highly skilled workers—including forklift operators, technicians, haulers, and crane operators—who are employed by IKEA at a distribution center located in Perryville, Maryland.

9.      Prior to the events that gave rise to the factual allegations and the claims for relief herein, Plaintiff IAM Local I460 and IKEA were parties to a collective bargaining agreement ("contract") that addressed the terms and conditions of employment for those workers. This contract was effective beginning August 31, 2020 and, with mutually-bargained extensions, was set to expire November 15, 2024.

10.     Among other terms, the contract established a system under which job duties and responsibilities would be assigned on the basis of workers' seniority, ensuring that IKEA would assign such duties and responsibilities fairly and without preferential treatment for individual workers. The contract also included wage provisions that provided for increases in wages that were consistent with increases in the cost of living.

11.     Prior to the expiration of the CBA, the parties mutually agreed to enter into negotiations for a successor agreement.

12.     During those negotiations, IKEA proposed revisions to the seniority system established under the previous contract. If implemented, IKEA's proposed revisions would

render the seniority system a nullity, giving management license to assign work and shifts on the basis of pure favoritism. IKEA also proposed wage provisions that, if implemented, would leave Local I460 workers' compensation outpaced by inflation, resulting in a decrease in the value of their wages.

13.    On November 14th, by an overwhelming margin, the members of Local I460 voted to reject the then-most-recent contract proposal that IKEA had presented during negotiations. IKEA's contract proposal was unsatisfactory to Local I460's members: it undermined the seniority system that had been established under the previous contract; and it offered wages that neither reflect the contributions of Local I460 workers to IKEA's success, nor put Local I460 workers in a position to provide for themselves and their families.

14.    At midnight the following day, November 15, 2024, Local I460 workers went on strike.

15.    As part of the strike effort, Plaintiff Local I460 selected and set up picket sites where striking workers and supporters could assemble to communicate their position on the contract dispute to business partners of IKEA, who may have an interest in learning about the parties' positions in the contract negotiations and may have an interest in supporting the strike effort; and other employees of IKEA, who have their own federally protected right to support the strike effort.

16.    One of the picket sites that Plaintiff Local I460 has selected is near the entrance of the distribution center. It is specifically located at the southern terminus of Maryland Road 327, a public road that is owned and maintained by the Maryland State Highway Administration, as depicted in the following image:



17.    The picket location is the only location where Plaintiff Local I460 members, and their supporters, can effectively communicate their position on the contract negotiations with IKEA to business partners and other employees of IKEA.

18.    Between November 15, 2024, and November 26, 2024, the picketers would assemble in the area described above.

19.     While this initial approach allowed the picketers to briefly capture the attention of those who were passing in and out of the IKEA distribution warehouse, this approach was of limited effectiveness.

20.    On November 26, 2024, to improve the effectiveness of the strike picket's communications, Plaintiff Local I460 began patrolling the area of the road where the southern terminus of Maryland Road 327 meets the access road that is, effectively, the entrance of the IKEA distribution warehouse, as identified in the image in Paragraph 16.

21.     Patrolling near the entrance of an employer's business operations is a common means by which, in various industrial settings, workers conduct strike pickets. Moreover, the picket site is on a public street, which has traditionally been considered a public forum for First Amendment purposes.

22.     On November 26, 2024, representatives of Plaintiff Local I460, including the General Vice President of IAM's Eastern Territory, David Sullivan, sought out officers from the Perryville Police Department for a discussion about the strike picket, and to specifically discuss their plan for pickets to patrol the entrance of the distribution warehouse.

23.     Soon after Plaintiff Local I460 did so, a Lieutenant from the Perryville Police Department met with representatives of Plaintiff Local I460, including GVP Sullivan, near the picket site.

24.     Those representatives explained to the Lieutenant that the participants would conduct their picket on the site described above, and that the picketers would intermittently cross the strip of road that connects Maryland Road 327 to the access road for the IKEA distribution center, without blocking or impeding ingress and egress to the distribution center. The officer asked for the Plaintiff's representatives to show him what they planned to do, and physically walked with them as they demonstrated their intentions. Once he understood what the workers intended to do, the officer approved of the Union's plan for the picket site, provided that the participants did not unreasonably delay traffic trying to enter or exit the distribution center.

25.     Upon information and belief, shortly after the conversation between Plaintiff Local I460's representatives and the Perryville Police Department Lieutenant, a Sergeant from the Perryville Police Department approached the picketers and instructed them not to cross the strip of road.

26.    When the officer approached the picketers, GVP Sullivan informed the officer that the picketers had cleared their plan with a Lieutenant of the Police Department to intermittently cross the strip of road.

27.    The officer told GVP Sullivan that the clearance he had received from the Lieutenant was incorrect, and that he did not care what another officer had told them because he did not give them permission.

28.    The officer again ordered the picketers not to cross the strip of road, and stated that any striking worker who crossed the street as part of their picket line activity would be arrested.

29.    GVP Sullivan informed the officer that federal labor law vested the picketers with the right to intermittently cross the road as part of the picket, and that they intended to do so. During this exchange, GVP Sullivan was not in any way blocking the ingress or egress of any vehicle seeking to enter the IKEA site.

30.    The Perryville Police Department officer then arrested GVP Sullivan, charging him with disorderly conduct under subsection (c)(1) of Md. Crim. Code § 10-201, which reads: "A person may not willfully and without lawful purpose obstruct or hinder the free passage of another in a public place or on a public conveyance."

31.    The order and arrest of GVP Sullivan had an immediate chilling effect on the picketers, who in compliance with the order and as a result of the arrest, moved to areas of the picket site where they could not conceivably be accused of crossing or entering Maryland Road 327.

32.    After the arrest, Robert Nitz, Chief of the Perryville Police Department, told a local news outlet: "The Perryville Police Department is committed to protecting the rights of all

parties, including the picketers however we cannot and will not allow individuals to disrupt normal operations of a business."[1]

33.     This statement fundamentally misapprehends the rights of Plaintiff and its members, which are protected under Section 7 of the National Labor Relations Act and the First Amendment of the United States Constitution, to engage in a strike picket which, by definition, is calculated to "disrupt normal operations of a business."

34.     This statement also confirms that the Perryville Police Department officer's order, which prohibited the strike picketers from patrolling the strip of road where the southern terminus of Maryland Road 327 and IKEA's access road meet, was a specific response to the expressive conduct of Plaintiff and its members, who were exercising rights that are protected by federal labor law and the United States Constitution.

35.     Defendants Town of Perryville; Michelle Linkey, Mayor of Perryville; and Robert Nitz, Chief of the Perryville Police Department have not withdrawn the order that was enforced by an officer of the Perryville Police Department and then used as the basis for arresting a Union official.

36.     The order, and the Perryville Police Department's continued enforcement of that order, have chilled Plaintiff Local I460 and its members from exercising their federal labor law and constitutional rights to picket IKEA, the employer with whom they are in a contract dispute, by directing that they will be arrested for exercising those rights.

---

[1] *See* Ryan Dickstein, "Picketing union official charged as tensions rise during strike at IKEA Distribution Center," WMAR (Dec. 4, 2024), https://www.wmar2news.com/local/picketing-ikea-distribution-center-worker-charged-as-tensions-rise-during-union-strike.

## COUNT ONE
## 42 U.S.C. § 1983 (Enforcing Section 7 of the NLRA, 29 U.S.C. § 157)

37.    Plaintiff realleges and incorporates by reference Paragraphs 1-36.

38.    Section 7 of the NLRA, 29 U.S.C. § 157, reads in relevant part: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

39.    This right is enforceable against Defendants. The Supreme Court of the United States has explained that Section 7 of the NLRA "creates rights in labor and management both against one another and against the State." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 109-10 (1989).

40.    In conducting the picket with which this action is concerned, Plaintiff and its members have exercised a fundamental right under Section 7 of the NLRA. The Supreme Court of the United States has explained:

> The primary strike, which is protected … is aimed at applying economic pressure by halting the day-to-day operations of the struck employer…. Picketing has traditionally been a major weapon to implement the goals of a strike and has characteristically been aimed at all those approaching the situs whose mission is selling, delivering or otherwise contributing to the operations which the strike is endeavoring to halt.

*United Steelworkers of America v. Nat'l Labor Rels. Bd.*, 376 U.S. 492, 499 (1964).

41.    In that case, the Supreme Court acknowledged that strike picketing by its very terms interferes with the "normal business operations" of a struck employer, and nonetheless approved of the strike picket at issue in that case, holding that Section 7 of the NLRA "preserve[s] the right to picket during a strike a gate reserved for employees of neutral delivery men furnishing day-to-day service essential to the plant's regular operations." *Id.*

42.     The actions of Defendants Town of Perryville; Michelle Linkey, Mayor of Perryville; and Robert Nitz, Chief of the Perryville Police Department, which were taken under color of law, have violated Plaintiff's rights under Section 7 of the NLRA, as well as the rights of Plaintiff's members under the NLRA.

43.     Specifically, Defendants violated Plaintiff's and its members' rights under Section 7 of the NLRA through their issuance of an order, the effect of which has been to unduly restrain Plaintiff's and its members' ability to "engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection" by prohibiting the picketers from patrolling the strip of road where Maryland Road 322 and the IKEA access road meet

44.     Defendants' enforcement of the order has, and will continue to, unduly interfere with Plaintiff's and its members' rights under Section 7 of the NLRA to "engage in … concerted activities for the purpose of collective bargaining or other mutual aid or protection."

**COUNT TWO**
**42 U.S.C. § 1983 (Enforcing the First Amendment of the United States Constitution)**

45.     Plaintiff realleges and incorporates by reference Paragraphs 1-44.

46.     The First Amendment of the United States Constitution reads: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

47.     The actions of Defendants Town of Perryville; Michelle Linkey, Mayor of Perryville; and Robert Nitz, Chief of the Perryville Police Department, which were taken under color of law, have violated Plaintiff's rights to assemble and to free speech, as well as Plaintiff's members' rights to assemble and to free speech.

48.     Defendants violated Plaintiff's and its members' rights to assemble and to free speech by issuing a constitutionally invalid restriction on the time, place, and manner in which the Plaintiff, its members, and supporters could conduct their strike picket in a setting that is understood as a traditional public forum. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 802 (1985) (recognizing public streets as traditional public fora).

49.     Defendants further violated Plaintiff's and its members' rights to assemble and to free speech when an officer of the Perryville Police Department ordered Plaintiff's members not to cross Maryland Road 327 during the picket and stating that any picketer who did so would be arrested.

50.     Defendants again violated Plaintiff's and its members' rights to assemble and to free speech when an officer of the Perryville Police Department arrested GVP Sullivan for failing to comply with the unconstitutional directive.

51.     Defendants' actions, specifically in sustaining the order, have continued to deprive Plaintiff and its members of rights secured by the First Amendment, including the rights to assemble and to free speech.

## COUNT THREE
### Article 40 of the Maryland Declaration of Rights

52.     Plaintiff realleges and incorporates by reference Paragraphs 1-51.

53.     Article 40 of the Maryland Declaration of Rights reads:

We, the People of the State of Maryland, grateful to Almighty God for our civil and religious liberty, and taking into our serious consideration the best means of establishing a good Constitution in this State for the sure foundation and more permanent security thereof, declare: …. That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak,

write and publish his sentiments on all subjects, being responsible for the abuse of that privilege.

54.    Defendants Town of Perryville; Michelle Linkey, Mayor of Perryville; and Robert Nitz, Chief of the Perryville Police Department, have violated Plaintiff's and its members' right to free speech under Article 40 of the Maryland Declaration of Rights, by issuing a restriction on the time, place, and manner in which Plaintiff and its members could conduct their strike picket that is inconsistent with the rights that are afforded to Maryland citizens under Article 40 of the Declaration of Rights.

55.    Defendants further violated Plaintiff's and its members' rights under Article 40 when an officer of the Perryville Police Department ordered Plaintiff's members not to cross Maryland Road 327 during the picket and stated that any picketer who did so would be arrested.

56.    Defendants again violated Plaintiff's and its members' rights under Article 40 when an officer of the Perryville Police Department arrested GVP Sullivan for not agreeing to comply with his order.

57.    Defendants continued enforcement of the order is an ongoing violation of the Plaintiff's and its members' rights under Article 40.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff asks the Court to award relief as follows:

A) An order enjoining Defendants to withdraw the unconstitutional order that prohibits Plaintiff's members and supporters from crossing the southern terminus of Maryland Road 327 as part of the strike picket, and to refrain from issuing any order, or taking any action, the effect of which would be a prohibition against Plaintiff, its members, and supporters intermittently crossing Maryland Road 327 as part of the strike picket;

B) An order declaring that Article IV, Clause Two of the United States Constitution; the First Amendment of the United States Constitution; Section 7 of the NLRA, 29 U.S.C. § 157; and Article 40 of the Maryland Declaration of Rights vests Plaintiff and its members with the right to intermittently cross Maryland Road 327 while conducting a strike picket;

C) An order declaring Defendants' actions unlawful under Article IV, Clause Two of the United States Constitution; the First Amendment of the United States Constitution; Section 7 of the NLRA, 29 U.S.C. § 157; and Article 40 of the Maryland Declaration of Rights;

D) An award of attorneys' fees and costs to the Plaintiff, pursuant to 42 U.S.C. § 1988(b);

E) Such other and further relief as the Court may find appropriate.

Respectfully submitted,

Date: January 9, 2025

*/s/ Abigail V. Carter*
Abigail V. Carter (Bar No. 20952)
Derrick C. Rice*
BREDHOFF & KAISER P.L.L.C.
805 Fifteenth Street NW, Suite 1000
Washington, DC 20005
Phone: (202) 842-2600
Fax: (202) 842-1888
acarter@bredhoff.com
drice@bredhoff.com

* Motion for *Pro Hac Vice* Admission Forthcoming

*Counsel for International Association of Machinists & Aerospace Workers Local 1460*